UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



OLDCASTLE PRECAST, INC.

                      Plaintiff,

-against-

LIBERTY MUTUAL INSURANCE COMPANY
METRA INDUSTRIES, INC.
                      Defendants.

7:16-cv-01914(NSR)

OPINION AND ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Oldcastle Precast, Inc. ("Oldcastle") moves to lift the stay and to confirm the arbitration award ("Arbitration Award"), pursuant to 9 U.S.C. § 9, issued by Arbitrator Thomas J. Rossi ("Arbitrator Rossi") on April 24, 2017. (ECF No. 54.) Defendants Liberty Mutual Insurance Company ("Liberty") and Metra Industries, Inc. ("Metra") (collectively referred to as "Defendants") cross-move to vacate portions of the Arbitration Award. (ECF No. 34.) For the following reasons, Plaintiff's motion is GRANTED and Defendants' cross-motion is DENIED.

## FACTUAL BACKGROUND[1]

    Plaintiff Oldcastle initially commenced this action on March 15, 2016 demanding payment in full from Defendant Liberty, as surety, for construction materials supplied to Metra pursuant to a contract. (ECF No. 1). On April 18, 2016, Liberty filed an answer. (ECF No. 9.) On May 25, 2016, this Court signed a consent order ("Consent Order") amending the pleadings to add Metra as a named co-defendant, allowing Plaintiff to file a petition, as substitute for the complaint, seeking to confirm the

---

[1] The facts are drawn from Plaintiffs' Complaint (ECF No. 1), Defendants' declarations, affidavits and accompanying exhibits, in support of their cross-motion to vacate the Award (ECF Nos. 36, 37, 38, 47, 64), and Plaintiff's declarations and accompanying exhibits (ECF No. 55, 57, 58, 60.)

Arbitrator Rossi's Award. (ECF No. 30.) Plaintiff Oldcastle filed its petition seeking to confirm the Arbitration Award on June 29, 2017. (ECF No. 31.)

The parties dispute arises from a written contract[2] ("Quotation Contract") entered into on or about October 21, 2014, wherein Metra was obligated but failed to make payments for goods provided by Oldcastle, and an Application for Business Credit, dated August 20, 2013. (ECF No. 57, Ex. 12 and Ex. 13.) Under the Quotation Contract, Oldcastle was to supply Metra with certain precast materials for use in the Pascack Bypass Culvert construction project ("Project"), in Rockland County, New York. Oldcastle alleges it is owed $506,281.57, plus interest from April 1, 2015, as well as reasonable attorney's fees, costs and disbursements. (Compl. ¶12.) Liberty was named as a defendant in the lawsuit because it signed a payment bond ("Payment Bond") guaranteeing prompt payment of all monies due to persons furnishing Metra with labor, materials and/or services in connection with the Project. (Compl. ¶¶ 5,6.)

Pursuant to Article 12 of the Quotation Contract, any dispute arising under the contract is subject to arbitration. On October 30, 2015, under the terms of the arbitration clause(s), Oldcastle filed a demand for arbitration with the American Arbitration Association ("AAA") seeking payment from Metra and Liberty. (ECF No. 57.) Under the terms of the May 25, 2016 Consent Order, Liberty agreed to be named as a defendant, to participate in and be bound by the arbitration determination. As a participant in the arbitration, Liberty was permitted to assert any and all claims and defenses. On November 17, 2015, Metra asserted affirmative defenses and counterclaims in the arbitration proceeding against Oldcastle. (ECF No. 57, Ex. C-3.) Arbitrator Rossi was duly appointed to preside over the arbitration proceeding in accordance with AAA Construction Industry Arbitration Rules. (ECF No. 47, Affidavit of Adam M. Tuckman in Support of Cross Motion to Vacate Portions of

---

[2] The parties submission indicates that the Quotation Contract is the controlling document.

Award ("Tuckman Aff.") ¶ 5.; (ECF No. 57, Declaration of David M. Toolan in Support of Motion to Confirm Arbitration and Lift Stay ("Toolan Decl.") ¶¶ 14-15.)

All parties agreed that the applicable substantive law was New York law. (Tuckman Aff. ¶ 14, ¶ 15.) All parties agreed that the applicable procedural rules were the Construction Industry Arbitration Rules and Mediation Procedures of the American Arbitration Association. (ECF No. 47, Ex. 1.) The arbitration hearing was conducted between February 14, 2017 and February 16, 2017 at the American Arbitration Association ("AAA") offices in Manhattan, New York. (Tuckman Aff. ¶ 4.; Toolan Decl. ¶ 17.) There is no transcript of the arbitration hearing.

The parties dispute various aspects of the testimony proffered in the arbitration hearing. The Defendants contend that Arbitrator Rossi interrupted, thus precluded, relevant portions of their expert's, Stephan Dioslaki ("Dioslaki"), testimony. In support of their contentions, Defendants submit affidavits of three individuals who attended the hearing: Dioslaki, Gary Stivaly, president and owner of Metra; and Adam Tuckman, counsel for Metra and Liberty. (Affidavit of Stephan P. Dioslaki in Support of Cross Motion to Vacate Portions of Arbitration Award ("Dioslaki Aff.") ¶ 34, Affidavit of Gary Stivaly in Support of Cross Motion to Vacate Portions of Arbitration Award ("Stivaly Aff.") ¶ 6; Tuckman Aff. ¶ 9.) Defendants assert that Dioslaki was not allowed to complete his testimony concerning the equipment pricing methodology he used, and operation of idle and equipment costs claimed in Metra's back-charges. (Tuckman Aff. ¶ 9.) When Dioslaki attempted to continue his testimony about equipment pricing methodology and the use of the Rental Rate Blue Book, Arbitrator Rossi purportedly interrupted him, denied him the opportunity to continue on the topic, and informed that he was familiar with the Blue Book manual, understood how it applied to back charges, and that Dioslaki could move on to other subjects without further explanation. (Tuckman Aff. ¶ 9.) Defendants also submit the affidavit of Charles Schattler, Metra's Project Superintendent, wherein he avers that he also testified about Metra's back-charges, and along with Dioslaki's testimony, explained how

3

Oldcastle's delivery and manufacturing problems led to downtime in Metra's work forces without any means of mitigation, and in other instances corrective work that caused additional hours of labor and equipment. (Declaration of Charles Schattler in Support of Cross Motion to Vacate Portions of Arbitration Award ("Schattler Decl.") ¶ 6; Dioslaki Aff. ¶¶ 31, 32.)

After Metra presented their witnesses, Defendants submit that Oldcastle did not cross-examine Schattler or Dioslaki regarding the pricing of Metra's back charges. (Dioslaki Aff. ¶¶ 35, 36.; Stivaly Aff. ¶¶ 4, 5 and Schattler Decl. ¶ 7.) In addition, the Defendants submit that Arbitrator Rossi did not further question Metra's reliance on the Blue Book rates during the hearing; nor did he question the number or type of equipment pieces used by Metra's added crews, or the pricing of the equipment costs in each of the back charges. (Stivaly Aff. ¶ 6.)

After Metra completed its presentation of evidence, Oldcastle called two rebuttal witnesses: Joseph McHugh, P.E. ("McHugh"), its expert, and Troy Mittler ("Mittler") an employee of the company. (Stivaly Aff. ¶ 8.) Purportedly, McHugh did not proffer any evidence, written or testimonial, to rebut or challenge Metra's alleged measure of damages. (Tuckman Aff. ¶ 12; Dioslaki Aff. ¶¶ 35, 36; Stivaly Aff. ¶¶ 4, 5.) Neither did Mittler. (Dioslaki Aff. ¶¶ 35, 36; Stivaly Aff. ¶¶ 4, 5.)

After the close of the hearing, Arbitrator Rossi instructed the parties to submit post-hearing briefs, inclusive of summations, an outline of the party's claim(s), and proposed award(s) and calculations, no later than March 20, 2017. (Tuckman Decl., Ex. 4.) Arbitrator Rossi further informed the parties that upon receipt of their respective briefs, he would notify them if oral argument by telephone conference would be necessary. (*Id.*) On March 24, 2017, each side submitted their post-hearing briefs and proposed awards. (Tuckman ¶¶ 14, 15.)[3] The arbitrator ultimately closed the record

---

[3] The Plaintiff's memorandum of law notes that they accept New York contract law as the applicable substantive law. (Plf. Mem. at 19.)

without taking oral argument. (Tuckman ¶ 16.) There is nothing in the written record to indicate that the Defendants objected to the procedures utilized during the arbitration proceeding.

On April 24, 2017, Arbitrator Rossi issued a decision granting Oldcastle's request for an award of damages, pursuant to the terms of the Quotation Contract, in the principal sum of $290,253.13, plus interest of $21,283.83, totaling $311,518.96. (ECF 55, Ex. 5). The $290,253.13 sum represents $496,406.57 due Oldcastle under the contract in actual damages, less $206,171.44 for Metra's counterclaims and or offsets. (*Id.*) Under the rubric of "General Findings" Arbitrator Rossi determined that the delay damages sought by Metra was not the fault of Oldcastle:

> "Concerning Metra's claims for delay damages, inefficiencies because of winter work and other delay/efficiency claims, other than exceptions addressed below, I find there were issues which contributed to the delay not the responsibility of Oldcastle which contributed to push the project into winter. These concurrencies preclude, as a general matter, the award of delay damages to Metra. Additionally, while not as broad as the 'no damages for delay" clause contained in the Credit Application, the Quotation Contract also limits delay damages.[4] I find that the reading of that clause proffered by Metra to be too strict and not a fair interpretation of it.'" (ECF 55, Ex. 5.)

Arbitrator Rossi determined that Oldcastle demonstrated entitlement to $506,281.57 for supplies provided less $9,875.00[5] for "Boxes Not Delivered." (*Id.*) Resulting in $496,406.57 due Oldcastle on its claim. He also concluded that Metra was entitled to an award of $206,171.44 on its counterclaim and offset, for "extra work incurred because of deficiencies with the boxes and the closure pours.[6]" (*Id.*)

As to a portion of Metra's counterclaims and offset, Arbitrator Rossi held there "was insufficient proof to establish actual damages sustained or the amounts requested" for the certain items at issue, resulting in no award or setoff. (*Id.*) "[D]amage calculations proffered by Metra's employee

---

[4] Paragraph 8 of the Quotation Contract provides in relevant part: "In the event that Seller fails to adequately repair or replace said materials, Purchaser's sole and exclusive remedy shall be the replacement or repair costs of said defective materials, but not any delays, disruption or other impact costs."
[5] Metra only disputed $9,875.00 of the amount sought by Oldcastle.
[6] Metra sought $1,105,006.02 in counterclaims and offsets.

5

for use, operation and/or downtime of Metra's own equipment which, for the most part, was on the site anyway, was found to be unreliable." (*Id.*) He also allowed a "12 percent above the base wage for the line item entitled 'Insurance Payroll & Tax,' rather than the 41 percent markup sought by Metra due to claimant's failure to proffer 'independent proof that a 41 percent mark-up was actually incurred.'" (*Id.*) He noted that the mark-up allowed was in addition to the "Benefits line item of about 60% and overhead and profit (21%) which were awarded." (*Id.*) Lastly, Arbitrator Rossi indicated [a]ll claims not expressly granted…are denied. (*Id.*)

Plaintiff seeks to confirm the Arbitration Award on the basis that the award is binding and proper. Defendants' seek to vacate the Arbitrator's Award on two basis: the arbitrator is guilty of misconduct because he failed to allow relevant evidence pertinent to the controversy, 9 U.S.C. §10(a)(3); and the arbitrator manifestly disregarded the applicable contract law of New York by reducing the amount claimed by Metra when he ignored their expert's unrefuted testimony concerning equipment costs and back charges. Plaintiff opposes the Defendants' application to vacate on the basis that their motion is merely an attempt to re-litigate the issue and that any evidentiary issue raised by Defendants is inaccurate and not a basis warranting vacatur of the award.

## LEGAL STANDARD

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., requires courts to enforce arbitration agreements in contracts involving interstate commerce. Typically, the confirmation of an arbitration award is a "summary proceeding that merely makes what is already a final arbitration award a judgement of the court." *Florasynth, Inc. v. Pickholz*, 750 F.3d. 171, 176 (2d Cir. 1984); *Corporación Mexacana De Manteniemiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*, 832 F.3d. 92,111 (2d Cir. 2016). However, FAA allows a district court to review an arbitral award and to "confirm and/or vacate the award in whole or in part." *D.H Blair & Co., Inc. v. Gottdiener*, 462 F.3d

6

95, 104 (2d. Cir. 2006)(citing *Hoeft v. MVL Group, Inc*., 343 F.3d 57, 63 (2d Cir. 2003). Under FAA, an arbitrator's award may be vacated on four narrow grounds. 9 U.S.C.A. § 10. 9 U.S.C.A. § 10, provides for vacatur of an award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

In addition to the statutory grounds for vacatur, the Second Circuit has held that a court may vacate an award if the arbitrator "has acted in manifest disregard of the law." *See e.g*., *Westerberbeke Corp. v. Daihatsu Motor Co., Ltd*., 304 F.3d. 200, 208 (2d Cir. 2002). This doctrine is considered one of "last resort" and its use has been limited to "only those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." *Duferco Intern Steel Trading v. T.Klaveness Shipping A/S*, 333 F.3d 383,389 (2d Cir. 2003).

Generally, a motion seeking vacatur of an arbitrator's award is rarely granted. See *Dueferco,* at 389 (from 1960 through 2003, when the opinion was written, the court rarely vacated on permissible - four out of 48 cases counted). The *Dueferco* court also articulated a three-part test to determine whether the doctrine applies. First, a reviewing court must consider whether the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators. *Id*. at 390 (citing *Westerbeke*, 304 F.3d at 208.) Second, if the court determines the law is plainly applicable, the plaintiff must demonstrate the law was improperly applied, leading to an erroneous outcome. *Id*. However, the court stated it would not vacate an award if the proper application of the law would have yielded the same result. *Id.* Third, if the first two elements are satisfied, the court will then look to whether the arbitrator "intentionally disregarded the law." *Id.*

7

Whether a party moves on statutory grounds or under judicial precedent, parties looking to overturn an arbitral award face an extremely high burden. Courts have long taken a deferential approach when reviewing arbitral awards. *United Paperworkers Int'l Union v. Misco*, *Inc.* 484, U.S. 29, 38 (1987). ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."); *Porzig v. Dresdner, Kleinwort, Benson, North America* LLC, 497 F.3d. 133, 139 (2d Cir. 2007); *Willemijn Houdstermaatschappi, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) citing *Folkways Music Publishers v. Weiss*, 989 F.2d. 108, 111 (2d Cir. 1993) ("Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."). This judicial deference "reflects the principle that '[t]he remedy for unduly broad arbitral powers is not judicial intervention: it is for the parties to draft their agreement to reflect the scope of power they would like the arbitrator to exercise.'" *T.Co.Metals, LLC v. Dempsey Pipe Supply, Inc.,* 592 F.3d 329, 345 (2d Cir. 2010). A motion to vacate in federal court "is not an occasion for *de novo* review of an arbitral award." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004).

A district court must confirm an arbitrator's award if there is "any colorable justification for the arbitrator's judgment, even if that reasoning would be based on an error of fact or law." *Hardy v. Walsh Manning Securities, LLC*, 341 F.126, 131 (2d. Cir. 2003) quoting *Westerbeke*, 304 F.3d at 212 n.8. A federal court may not vacate an award simply because of a disagreement with the merits of the decision. *Wallace v. Buttar,* 378 F.3d at 190; *Data & Development, Inc. v. InfoKall*, Inc., 513 Fed. Appx. 117, 118 (2d Cir. 2013) ("An arbitration award may not be vacated because of disagreement with the arbitrator's evaluation of the evidence."). The Court need only find a "barely colorable justification for the outcome reached." *Id.* quoting *Banco de Seguros del Estado v. Mutual Marine Office Inc.*, 344 F.3d, 260, 261 (2d Cir. 2003) (citation and quotation marks omitted).

8

The moving party bears "the burden of proof, and the showing required to avoid confirmation is very high." *STMicroelectronics N.V. v. Credit Suisse Securities (USA) LLC*, 648 F.3d 68, 74 (2d. Cir. 2011) citing *D.H. Blair*, 462 F.3d 95, 110 (2d. Cir. 2006); *Wells Fargo Advisors, LLC v. Sappington*, 328 F.Supp3d 317, 322 (S.D.N.Y. 2018); *T-Jat Systems 2006 Ltd. V. Amdocs Software Systems Ltd.*, No. 13–CV–5356 (JMF) 2015 WL 394075 at *3 (S.D.N.Y. Jan 29, 2015).

## DISCUSSION

As previously mention, confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Florasynth, Inc. v. Pickholz*, 750 F.2d at 176. The court "must grant" the arbitrator's award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. The parties do not dispute that their disagreement is properly before the arbitrator. Nor do they dispute participating in an arbitration proceeding wherein they agreed to be bound. Thus, the only relevant inquiry is whether there is a legal basis for modifying or vacating the arbitrator's decision.

**Claim of Misconduct**

Defendants argue that the arbitral award should be vacated on the grounds that the arbitrator was "guilty of misconduct" in "refusing to hear evidence pertinent and material to the controversy." *See* 9 U.S.C.A. §10 (a)(3). Arbitral misconduct "typically arises where there is proof of either bad faith or gross error on the part of the arbitrator." *In re Cragwood Managers, L.L.C.*, 132 F. Supp. 2d 285, 287 (S.D.N.Y. 2001) (quotation marks and citation omitted). Generally, courts have refused to second-guess an arbitrator's evidentiary decisions unless they find that the arbitrator undermined the "fundamental fairness" of a given proceeding. *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997). Arbitrators "need not follow all the niceties observed by the federal courts." *Tempo Shain Corp.*, 120 F.3d at 20 quoting *Bell Aerospace Co. Div. of Textron v. Local 516*, 500 F.2d. 921, 923 (2d Cir. 1974). Arbitrators are afforded "substantial discretion to admit or exclude evidence." *LJL 33rd*

9

*Street Associates LLC v. Pitcairn Properties Inc.*, 725 F.3d. 184, 194 (2d. Cir. 2013). There is no requirement that an arbitrator allow admission of cumulative evidence. *Max Marx Color & Chemical Co. Employees' Profit Sharing Plan v. Barnes*, 37 F.Supp.2d. 248, (S.D.N.Y. 1999) (An arbitration panel "need not compromise speed and efficiency, the very goals of arbitration, by allowing cumulative evidence."). Arbitrators have "broad discretion" to determine whether to hear evidence. *Trina Solar US. v. JRC-Services LLC*, 229 F.Supp.3d 176, 190 (S.D.N.Y. 2017) citing *Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.,* 738 F. Supp. 789, 792 (S.D.N.Y. 1990), *aff'd*, 931 F.2d 191 (2d Cir. 1991). To prove the denial of the right to a fundamentally fair hearing, a challenging party must demonstrate that his "right to be heard has been grossly and totally blocked." *Oracle Corporation v. Wilson*, 276 F.Supp.3d 22, 29 (S.D.N.Y. 2017) (citing *Stifel, Nicolaus & Co. v. Forster*, No. 14-cv-6523(RWS), 2015 WL 509684 at *5 (S.D.N.Y. Feb. 6, 2015) (internal quotation marks omitted). A challenging party must also show that the "exclusion of evidence prejudiced him." *Rai v. Barclays Capital Inc*., 739 F.Supp.2d 364, 372 (S.D.N.Y. 2010), *aff'd*, 456 Fed. Appx. 8 (2d Cir. 2011).

Without the benefit of a detailed transcript, a party seeking to modify or vacate an arbitrator's decision carries a heavy burden. *In Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99 (2d Cir. 2013) (holding the parties reliance on various affirmations to support their contention that arbitrator was bias and his decision tainted by fraud and corruption was insufficient to warrant vacating an award absent a clear showing); see also *DDR Construction Services, Inc. v. Schlesinger Electrical Contractors*, *Inc*., 2017 WL 4334085 at *10 (E.D.N.Y. July 11, 2017) citing *Kolel*, 729 F.3d at 107 ("Where there is no transcript of the arbitration and the parties do not agree on multiple disputed facts relevant to the issue of vacatur, the party seeking vacatur cannot meet that high threshold.").

There is insufficient evidence to support a finding that Defendants were subject to a fundamentally unfair proceeding or that they were denied an opportunity to be heard. Defendants argue that Arbitrator Rossi's decision to interrupt their expert's testimony about the Rental Rate Blue Book's equipment pricing methodology, and the operation and idle equipment costs, claimed in Metra's back charges, constitutes a violation of the fundamental fairness. Given that there is no transcript of the hearing, the Court is without the ability to ascertain what exactly transpired. Defendants' allegations, though supported by affidavits, are disputed by Plaintiff.

The parties jointly picked an arbitrator who they believed was knowledgeable in the relevant subject matter, construction disputes. Defendants concede that Dioslaki, along with other experts, testified in some detail. Simply because the arbitrator did not need to hear all details on all issues, does not mean Defendants were denied a fundamentally fair proceeding. Defendants also contend that Arbitrator Rossi based his decision on evidence outside the record. However, Defendants proffer no evidence to support their contention. Such argument is nothing short of pure speculation. Furthermore, the Defendants only raised the issue of fundamental fairness after the arbitrator issued his decision. Defendants did not raise any evidentiary objections in its post hearing submission.

The AAA Construction Arbitration rules, which the parties both agree are applicable and binding, specifically require that a party raise any objections about procedural fairness before a decision is issued. AAA Construction Arbitration, R-42 "Waiver of Rules" states: "Any party who proceeds with the arbitration after knowledge that any provision or requirement of these Rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object." Defendants failed to raise a timely objection as required. In accordance with R-42 Waiver Rules, Defendants' failure constitutes a waiver. To allow such an objection to be raised at this juncture, would undermine the goal of arbitration which is speed and efficiency. *Max Marx Color & Chemical Co. Employees' Profit Sharing Plan v. Barnes*, 37 F.Supp.2d. at 251.

Defendants contend they presented uncontroverted evidence in support of their measure of damages. In further support of their contention, Defendants argue that Plaintiff's post-hearing briefs support a finding that Plaintiff did not challenge their evidence concerning equipment damages, insurance and payroll costs. Plaintiff, on the other hand, contends it disputed Defendants' evidence on multiple ground during the hearing.

Arbitrators enjoy great discretion in determining whether to admit or exclude evidence. AAA Construction Arbitration, R-35 (b) "Evidence," explicitly states that the "arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered. The arbitrator may request offers of proof and may reject evidence deemed by the arbitrator to be cumulative, unreliable, unnecessary, or of slight value compared to the time and expense involved." Thus, in accordance with AAA rules, Arbitrator Rossi's decision to exclude, both documentary and testimonial evidence deemed non-relevant, cumulative, unreliable or unnecessary was within his authority.

**Claim of Manifest Disregard**

Defendants contend that Arbitrator Rossi manifestly disregarded New York contract law when he calculated and reduced Metra's measure of damages on its counterclaims. The doctrine of manifest disregard is severely limited. *Giller v. Oracle USA, Inc.*, 512 F. App'x 71, 72 (2d Cir. 2013). The application of the standard involves three inquiries: whether the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrator; whether the applicable law was in fact improperly applied resulting in an erroneous outcome; and whether the arbitrator intentionally disregard the law. *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003) (internal citations omitted).

Generally, an arbitrator is often selected for expertise in the commercial aspect of the dispute or for trustworthiness, rather than for knowledge of the applicable law, and under the test of manifest disregard is ordinarily assumed to be a blank slate unless educated in the law by the parties. *Goldman*

12

*v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002). Given the great deference accorded to an arbitrator's decisions, the standard requires more than a mistake of law or a clear error in fact finding. *Goldman v. Architectural Iron Co.*, 306 F.3d at 1216 citing *Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 892-93 (2d Cir.1985). Vacatur on the grounds of manifest disregard is granted "only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Giller v. Oracle USA, Inc.*, 512 F. App'x at 72-73 quoting *T.Co. Metals*, 592 F.3d at 339 (internal quotation marks and brackets omitted). Internal inconsistencies within an arbitral judgment does not constitute a basis for vacatur. See *Saint Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199*, 116 F.3d 41, 44–45 (2d Cir.1997). Similarly, a mere misapplication of an ambiguous law does not constitute manifest disregard. *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d at 339. To prevail on a claim of manifest disregard, the moving part must prove that the arbitrator was not only aware of the governing legal principle but knowingly refused to apply it or intentionally disregarded the governing principle or law. See *New York Tel. Co. v. Commc'ns Workers of Am. Local 1100, AFL-CIO Dist. One*, 256 F.3d 89, 91 (2d Cir. 2001).

    Defendant failed to demonstrate that Arbitrator Rossi manifestly disregarded the law. Defendants' mere disagreement with the evaluation of the evidence, the weight to be accorded, and credibility determinations made by the arbitrator is insufficient to warrant vacatur of the award. Despite having a right to do so, Defendants failed to make timely written objections. There is insufficient evidence to support a finding that the arbitrator intentionally disregarded a prevailing principle of law. Moreover, Arbitrator Rossi provided a written justifications for the respective awards and set offs. Additionally, the lack of a transcript and a lack of showing of bad faith by the arbitrator warrants denial of the motion.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to vacate any and all existing stays, and to confirm the Arbitration Award of Arbitrator Thomas J. Rossi, dated April 24, 2017, is GRANTED. The Clerk of the Court is directed to enter Judgment in favor of Plaintiff Oldcastle, consistent with the Arbitration Award, in the amount of $311,518.96, representing $290,235.13 (in damages less counterclaims and setoffs), plus $21,283.83 in interest (4% interest per annum commencing June 30, 2015 through April 30, 2017). In accordance with the arbitration decision, the administrative fees of the American Arbitration Association totaling $27,400 and the compensation and expenses of the arbitrator totaling $17,369.00, shall be borne as incurred. The Court respectfully directs the Clerk of Court to terminate the motion at ECF Nos. 34 and 54 and to close the case.

Dated: March 12, 2019
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge